IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

GREGORY FRAZIER, # 144000                                                               PETITIONER

v.                                                            No. 2:11CV104-MPM-DAS

TIMOTHY MORRIS AND
ATTORNEY GENERAL OF
THE STATE OF MISSISSIPPI                                            RESPONDENTS

**MEMORANDUM OPINION**

      Gregory Frazier was convicted of aggravated assault in the Circuit Court of Bolivar County, Mississippi, and sentenced to twenty years in the custody of the Mississippi Department of Corrections. After exhausting his state court remedies, he seeks a petition for *habeas corpus* relief in this court alleging ineffective assistance of counsel. For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

**Limitations on Review**

      Consideration of a federal petition for *habeas corpus* is a two-tiered process. Before considering the merits of any claim, the court must first determine if all procedural steps necessary to preserve each issue raised for federal review have been taken. The petition must be timely filed.[1] Each claim in the petition must have been exhausted.[2] The claim must have been

---

[1] There is no challenge to the timeliness of this petition.

[2] "An application of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies in the courts of the State." 28 U.S.C. § 2254((b)(1)(A). "A fundamental prerequisite to federal *habeas* relief under 28 U.S.C. § 2254 is the exhaustion of all claims in state court under § 2254(b)(1) prior to requesting federal collateral relief." Sterling v. Scott, 57 F.3d 451, 453 (5th Cir.), (citing Rose v. Lundy, 455 U.S. 509 (1982)). The doctrine serves the salutary purpose of "giving the state courts the first opportunity to review the federal constitutional issues and to correct any errors made by the trial courts," and thus "serves to minimize friction between our federal and state systems of justice." *Satterwhite v. Lynaugh*, 886 F.2d 90, 92 (5th Cir. 1989)

presented to the highest court in the state, the Mississippi Supreme Court in this case, either on direct appeal through post-conviction proceedings. If the claim is exhausted, the court generally proceeds to the merits. If the claim is not exhausted and state post-conviction relief is no longer available, the claim will be finally dismissed.[3]

Petitioners must also meet state procedural requirements. If the state court, through its regularly enforced rules and procedures, refuses to consider an issue on the merits because of a procedural violation, the federal courts will generally not consider the procedurally defaulted claim. To overcome this bar of procedural default, the petitioner must show "cause and prejudice" for his default, or that a "fundamental miscarriage of justice" would result from its application.[4]

If an issue has been exhausted – and all state procedures followed –federal courts may reach the second tier of the process: addressing the issues on the merits. Merits-based consideration is, however, limited to addressing those issues affecting substantial federal constitutional rights. Federal courts do not function as appellate courts over the states, hold no supervisory authority over those courts, and may not correct errors of state law unless they also

---

(quoting Rose, 455 U.S. at 518) (citations omitted)).

[3] *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).

[4] "Where a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, this court may not review the prisoner's *habeas* petition unless he can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Moawad v Anderson*, 143 F.3d 942, 947(5th Cir. 1998) *citing Stokes v. Anderson*, 123 F.3d 858, 859 (5th Cir.1997). A "fundamental miscarriage of justice" is shown only where the petitioner can establish his factual innocence of the crime of conviction, with new reliable evidence not presented at trial. *Fairman v. Anderson*, 188 F.3d. 635, 644(5th Cir. 1999) (*citing Ward v. Cain*, 53 F.3d 106,108 (5th Cir. 1995)).

violate the constitutional rights of an accused.[5]

Even in matters affecting fundamental constitutional rights, federal courts have a limited scope of review. Title 28 U.S.C. § 2254(d) provides:

> (D) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A federal court may not disturb the legal holdings of a state court even if convinced they are erroneous, unless the decision is contrary to established federal law – or the application of federal law is objectively unreasonable.[6] A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that arrived at by [the Supreme Court] on the question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."[7] The case represents an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's

---

[5] *Gilmore v. Taylor*, 508 U.S. 333, 348-49 (1993) (O'Connor, J. concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal *habeas*").

[6] *Williams v. Taylor*, 529 U.S. 362 (2000).

[7] *Id.* at 413.

case."[8] Under this statute, the court must presume that each state court factual finding is correct. These findings can be disturbed only if the petitioner rebuts the presumption with clear and convincing evidence.[9] Frazier's claims have been reviewed in light of these limitations.

### Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, Frazier must show that, "(1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense."[10] Federal courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."[11] The court is not to analyze counsel's actions in hindsight, but rather to judge his or her decisions in a "highly deferential" manner.[12] If counsel's performance was deficient, "then [the court] must determine whether there exists a reasonable probability that but for the complained-of error the outcome of the trial or appeal would have been different,"[13] or that counsel's performance renders

---

[8] *Id.*

[9] 28 U.S.C. § 2254(e)(1).

[10] *Pitts v. Anderson*, 122 F.3d 275 (5th Cir. 1997); *see Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[11] *Strickland*, 466 U.S. at 689.

[12] *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994); *quoting Strickland*, 466 U.S. at 689.

[13] *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997).

the result of the proceeding fundamentally unfair or unreliable.[14]  The petitioner must not just allege prejudice, but must affirmatively prove it.[15]

Frazier did not persuade the Mississippi Supreme Court that his claims have merit; as such, his burden in this court is greater still.  He must show not only that he suffered ineffective assistance of counsel, but that the Mississippi Supreme Court's decision to the contrary was not merely erroneous, but unreasonable.  The court has analyzed each of Frazier's claims under this standard.

## Summary of the Record

On April 9, 2008, about two weeks after the end of their six-year dating relationship, Frazier started harassing Crystal Waddlington ("Crystal") with repeated calls and texts.  When she returned his calls around lunch time, he threatened to come to Clarksdale, Mississippi and kill her.  Crystal was a nursing student at the time.  She was afraid for her life and reported what was happening to Dr. Evelyn Smith, the Director of Nursing at Coahoma Community College.  Dr. Smith, in turn, alerted the police.  Dr. Smith testified that she overheard threats against Crystal on her cell phone.  Later that day, Crystal tried to get a restraining order in Coahoma County, but was instructed she would need to apply for protection in Bolivar County.  Over the course of the afternoon, Frazier and Crystal had numerous phone conversations.  Because Frazier appeared to have calmed down, Crystal decided to go to his home to talk.

Frazier shot Crystal in his bedroom while the two were alone.  According to Crystal, Frazier demanded to see her cell phone and pulled a gun on her when she initially refused.  While

---

[14]  *Vuong v. Scott,* 62 F.3d 673, 685 (5th Cir. 1995).

[15]  *Bonvillain v. Blackburn*, 780 F. 2d 1248, 1253 (5th Cir. 1986).

Frazier was going through her phone logs and texts, a "private" caller rang her phone. Frazier held a gun to Crystal's head demanding she answer the phone and tell him who was calling. Crystal answered the phone and had a brief conversation, before the caller hung up. Frazier again demanded to know who the caller was. Crystal said she did not know. Frazier then shot Crystal in the leg, put the gun back to her head and demanded the identity of the caller. Crystal testified that she was unarmed when Frazier shot her. Frazier's mother, who was also at home, then knocked on his door and asked what was happening. After the shooting, Frazier went through her purse, presumably for the gun she normally kept there, but on that day had left in her car's glove compartment. She testified that the knife Frazier claimed she had used was one of his knives which he kept in his bedroom.

     Frazier claimed at trial that, though he was acting in self-defense when Crystal pulled a knife on him, he did not deliberately shoot her. He testified that he became alarmed about Crystal tightly clutching her purse because he knew she normally carried a gun. When Crystal went into the bathroom, Frazier took the opportunity to retrieve his gun from under the bed and put it under the sheets next to him. When Crystal returned, she sat in the recliner at the end of his bed with the purse close to her feet. Frazier claims he grabbed his gun and rolled out of the bed after Crystal pulled a knife on him. He claims he was trying to disarm Crystal and that she grabbed the gun. In the struggle over the gun, it discharged. Frazier, however, told the first two officers at the scene that he and Crystal had been arguing and that he shot her in self-defense. He did not say the shooting was an accident. Crystal was sitting in a recliner about six feet from the bed when Frazier shot her.

## Conclusory Allegations

Frazier has made several claims of ineffective assistance of counsel, but his brief conclusory claims are devoid of factual allegations. Frazier devotes one sentence to each of these claims:

> The trial attorney failed to secure an exculpatory witness. He failed to present the only jury instructions that defendant may be acquitted under. He failed to object to a jury instruction that guaranteed defendant[sic] conviction by defendant[sic] own testimony. He didn't object to a irrelavant[sic] highly prejudice[sic] testimony. His professional misconduct undermined the defense.

The only other information provided with the petition was the Mississippi Court of Appeals decision affirming his conviction on direct appeal. While the opinion provides a synopsis of the record, the Mississippi Court of Appeals rejected Frazier's claims of ineffective assistance of counsel without enumerating them. Frazier submitted no other documentation and did not incorporate any part of the state court record or pleadings into his federal petition.

Courts are required to liberally construe *pro se* pleadings. The court is mindful of the extent to which it must go in construing the pleadings of a non-lawyer,[16] but must also remember

---

[16] *Haines v. Kerner*, 404 U.S. 519(1972) (the *pro se* complaint alleged lack of due process sufficient to meet the then current 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1975)); *Blackledge v. Arledge*, 431 U.S. 63, 75 n.7 (1977)(Petitioner challenging a guilty plea on the grounds of an unkept promise in the plea bargain, had stated sufficient facts to point to a 'real possibility of constitutional error," (Advisory Note to Rule 4, Rules Governing *Habeas Corpus* Cases), where he detailed the terms of the promise, including when, where and by whom the promise was made, and identified one witness to the promise.); *White v. Wyrick*, 530 F.2d 818 (8th Cir. 1976) (per curiam) (Though court could not entertain the state court claim that the petitioner's conviction was supported by insufficient evidence it liberally construed the petition to allege the closely related federally cognizable claim that no evidence supported the verdict. "[W]e note that petitioner appears *pro se* and is entitled to have his pleadings interpreted liberally and his petition should be construed to encompass any allegation stating federal relief, i.e., that the record is void of any credible evidence to sustain a conviction." *Id.* at 819); *Franklin v. Rose*, 765 F.2d 82 (6th Cir. 1985)(citing *Wyrick* as authority, reversed dismissal of a *habeas* petition on the grounds that the lower court had failed to liberally construe the petition. The lower court

the limits of liberal construction. The court does not excuse the failure to make any argument; nor does the requirement for liberally construing a petition give the court license to raise issues that the *pro se* litigant has omitted.[17]

None of Frazier's grounds in the petition set forth facts to provide the court with even the hint of a claim. He does not set forth why he believes that his attorney was deficient, and he offers no proof of prejudice. As Frazier did not even incorporate his post-conviction motion by reference, there is simply nothing the court can liberally construe to arrive at a claim. It is neither court's responsibility nor prerogative to comb through state court records to ascertain what claims a petitioner might have made.

---

failed to consider allegations in documents incorporated in the petition by reference. Liberal construction "requires active interpretation in some cases to interpret a pro se petition." *Id*. at 85.); *Guidroz v. Lynaugh*, 852 F,2d 832(5th Cir. 1988)(The petition raised the issue of due process denial by improper closing argument by the prosecution by incorporating a state appellate brief that raised the issue.)

[17] *Johnson v. Quarterman*, 479 F.3d 358 (5th Cir. 2007) (*Pro se* briefs are entitled to liberal construction, but even *pro se* litigants must brief arguments in order to preserve them.); *United States v. Hampton,* 99 F.3d 1135 (5th Cir. 1996) ("This court applies two principals in trying to make sense of an inarticulate *pro se* brief. First, the brief must be liberally construed. The court holds the *pro se* litigant to a lower standard of argument than that to which attorneys are held. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). **Second, the *pro se* appellant must actually argue something that is susceptible to liberal construction**. (*Id*. at *1.) (Emphasis added)); *U.S. v. Martin*, 68 F.3d 464 (5th Cir. 1995)(recognizing the limits to liberal construction, the court declined to construe abandoned issues as included in the appeal or presented to the lower court); *United States v Hartshorn*, 2007 WL 4146699 (S.D. Tex. 2007)("*Pro se* pleadings are reviewed under a less stringent standard that those drafted by attorneys and are entitled to a liberal constructions that includes all reasonable inferences which can be drawn from them. (*Citing Haines v. Kerner).* At the same time, however, *pro se* litigants are still required to provide sufficient facts in support of their claims. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Even under the rule of liberal construction, 'mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue,' *Id*." (Citations omitted); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983)

Frazier addressed his claims in some detail in his traverse, but this does not cure his default. His claims, and the facts supporting them, must be set forth in the petition. Frazier's petition should be denied as conclusory.[18]

### Ground 1A: Failure to Call Exculpatory Witness

Frazier claims that his attorney failed to provide effective assistance of counsel when he did not call an "exculpatory witness." His petition does not name any witnesses, but the respondents have construed this claim, by reference to Frazier's state post-conviction motion.[19] Addressing the merits of the claim raised in the state post-conviction pleadings, as if raised in the federal petition, the court holds that the claim is without substantive merit.

In his state petition, Frazier complained that trial counsel failed to call two police officers, whose testimony, he claims, would contradict the testimony of both Dr. Smith and Crystal. Both women testified that the officers overheard Frazier making threats against Crystal while she was in Smith's office. The record includes statements from Officer Brown, a campus police officer, and Officer Bobo of the Clarksdale Police Department (Dkt 11-3, p. 170-174). After the threats were reported, both officers went to Smith's office and spoke with Crystal and Dr. Smith. Bobo left the office to assist in stopping Frazier, who had arrived in Clarksdale. Brown remained with the women. In his statement, Officer Bobo says that he was present when Frazier called – and that he heard Crystal's side of the conversation, but could not hear what Frazier was saying. In his

---

[18] *Green v. Johnson,* 160 F. 3d 1029, 1043 (5th Cir. 1998) ("Mere conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue."). *U.S. v. Wood*, 870 F.2d. 285, 288 N.3 (5th Cir. 1989); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).

[19] The court appreciates the thoroughness of respondents' counsel in perusing the record to determine the claims.

statement, Brown does not say whether he overheard any threats. According to Bobo's statement, however, Brown said that he heard threats while Bobo was away.

"Complaints of uncalled witnesses are not favored in federal *habeas corpus* review because allegations of what a witness would have testified are largely speculative."[20] Even with statements in the record, any testimony the officers could have offered remains largely a matter of speculation. The court must consider that counsel decided as a matter of trial strategy not to call either after considering the pros and cons of their potential testimony. The discrepancy between the women's testimony and the officers' statements is not significant. Did the officers simply get confused about who was in the room during one of several phone calls? Was Bobo simply unable to hear Frazier making threats that others in the room heard and understood? There are plausible explanations for the discrepancy that do not call into question the truth or accuracy of the women's testimony. The possible exculpatory value of disputing this testimony is, therefore, limited.

Frazier's attorney would have to weigh the slight value of bringing out this discrepancy against the real potential of damage from testimony of either or both officers. A reasonable attorney could decide that the value of highlighting a minor discrepancy was not worth the potentially harmful testimony of the officer's regarding Frazier's behavior and Crystal's obvious distress. Brown apparently heard the threats and would have been a third witness to them. Bobo's statement indicates that he told Frazier to leave Clarksdale and not to contact Crystal again. Yet within minutes of Bobo's return to Dr. Smith's office, Frazier called Crystal again and hung up on Bobo when he got on the phone. The officers could also have testified about Crystal's

---

[20] *Lockhart v. McCotter,* 782 F. 2d 1275, 1282 (5th Cir. 1986); *Marler v. Blackburn,* 777 F.2d 1007, 1010 (5th Cir. 1985); *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984); *Sayre v. Anderson*, 238 F.3d 631, 635-636 (5th Cir. 2001).

demeanor, testimony unlikely to help Frazier's defense, given Smith's description. Frazier's attorney could well have decided, as a matter to trial strategy, that any benefit from their testimony was outweighed by potential prejudice from other testimony the officers would likely have given. The court will not second-guess counsel's decision not to call these witnesses, even without the benefit of the presumption of reasonableness in his choice of witnesses.[21]

Frazier points out that his attorney, in the trial transcript, mentions he would be calling Officer Bobo, only to be informed that he was not present at trial. Frazier argues that this shows the failure to call Bobo was not a tactical decision, but a failure to secure his presence. The record reveals that the attorney said only that he would "probably" call the officer, in response to the court's inquiry about potential witnesses (Dkt 11-2, p. 72). The record, however, suggests another explanation for his mentioning Bobo – pressure from Frazier, himself, who filed a *pro se* motion demanding that both officers be called. This reference does not establish that counsel would have called Bobo, nor that he thought calling him was a good choice. However, assuming for the sake of argument that the failure to secure Bobo's presence at trial was attorney error, Frazier has alleged no prejudice from such an oversight. The witness would not have provided significant exculpatory testimony – and would probably have given substantial damaging testimony. Frazier was not prejudiced by the absence of this testimony.

### Ground 1-B: Jury Instructions

In his second claim, Frazier alleges that his attorney "failed to present the only jury instructions that defendant may be acquitted under" and "failed to object to a jury instruction that guaranteed defendant['s] conviction by defendant['s] own testimony." Referring again to the

---

[21] *Kyles v. Whitley*, 5 F.3d 806, 818 (5th Cri. 1993).

state post-conviction motion, the respondents argue that Frazier is claiming his attorney failed to obtain an explicit self-defense instruction. In Frazier's state motion, he also argues that his attorney should have submitted an instruction on accident. He also attempted in his state motion to claim that Crystal was a burglar and therefore his attorney should have requested castle doctrine or stand your ground instructions.

As a general rule, jury instructions do not form a basis for *habeas corpus* relief, which is available only when a petitioner establishes that improper instructions caused a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.[22] Frazier concedes in his traverse that the self-defense instructions given were correct statements of law, and a review of those instructions shows no error or irregularity with these instructions.

As to the accident theory, Frazier's testimony that he did not intentionally fire the gun supports the granting of an accident instruction, even though his claim was impeached on cross-examination and contradicted by other testimony and physical evidence. A separate accident instruction would normally be requested on this record. Nevertheless, the rejection of this claim by the Mississippi Supreme Court cannot be found to be unreasonable for a number of reasons. First, the jury was correctly instructed that the state was required to prove each element of aggravated assault before they could convict. Specifically, the jury was instructed, "[i]f you find from the evidence beyond a reasonable doubt that, on or about April 9th of 2008, the defendant Gregory Frazier did unlawfully, *wilfully and feloniously and purposely and knowingly* caused

---

[22] *Williams v. Lockhart*, 736 F.2d 1264, 1267 (5th Cir. 1984); *Tarpley v. Estelle*, 703 F.2d 157, 159 (5th Cir. 1983) *citing Cupp v. Naughten*, 414 U.S. 141, 147, (1973).

bodily injury to Crystal Wadlington with a deadly weapon and not in necessary self-defense, you shall find the defendant guilty of aggravated assault." (Dkt 11-2, p 101)(Emphasis added). This instruction required the jury find that the shooting had to be wilful and purposeful – thus, necessarily, that it was not accidental – in order to convict Frazier. Further, the failure to include a separate instruction was not prejudicial. The concept of accident is not a complex, obscure legal concept. Additionally Frazier's claim of accident was addressed in closing argument by the prosecution. The prosecution argued: "[B]ecause he wants to get off of this by accident, because he knows his self-defense is falling through. A paramour on the cell phone justified deadly force. So he says that it's an accident and he was struggling." (Dkt 11-2, p. 113). "I submit to you that the evidence supports that he's guilty beyond a reasonable doubt of aggravated assault. There is not even necessary self-defense in here. There is not even accident. It's deceit on his part."(Dkt 11-2, p. 125). The prosecution told the jury, in closing – explicitly – what the consequence of a finding of accident would be: acquittal.

Also, the proof in this case is not the "he-said, she-said" battle of testimony that Frazier would have this court believe. The jury had proof of the threats made by Frazier against his victim, the very day of the shooting. Frazier claimed that the victim came after him with a knife; however, the evidence establishes that Crystal was shot while seated in a recliner some six feet from the bed. Also, Frazier talked to two police officers at the scene of the shooting, and he told both of them that he had shot Crystal in self-defense. He did not say that the shooting was an accident. Finally though Frazier argues with the accuracy of the record, he incriminated himself when he testified that he thought Crystal had been with another man the day of the shooting, establishing the motive for his crime. (Dkt. 11-2, p. 80).

Frazier also claimed in his state motion that Crystal was a burglar and that his attorney should have raised obtain castle doctrine, "stand your ground" instructions. The evidence does not, however, support such an instruction. Crystal said she called Frazier's number on her arrival at his home, and his son answered and told her the door was open. Frazier corroborates this testimony by saying that his son had his phone. While Frazier testified that Crystal burst into his room, and his testimony attempted to portray Crystal as the aggressor, he neither testified that she had broken into the premises, nor did he make any such report to the officers after the shooting. Instead, he told them that they had been arguing before he shot her. Likewise, the state did not argue that Frazier had a duty to retreat; the State argued, instead, that the shooting was neither an accident nor any type of self-defense. There is no testimony to support such jury instructions, and counsel rendered effective assistance in deciding not to seek jury instructions as to these defenses.

### Ground 1(C): Failure to Object to
### Irrelevant, Highly Prejudicial Testimony

Frazier's state post-conviction motion contains his argument that Dr. Smith should not have been allowed to testify. Frazier thinks that her testimony is irrelevant because she neither knew him, nor was she a witness to the shooting. Smith testified that Crystal was extremely upset – almost hysterical – after Frazier threatened her. Smith personally overheard threats being made against Crystal on the day Frazier shot her.[23] Frazier's threats to kill the woman he shot – mere hours before the shooting – are clearly relevant. Counsel rendered effective assistance by declining to make a meritless objection.

---

[23] Ironically, though not in the state court trial record, Frazier's inclusion of the victim's phone records further confirms that he was the man who threatened Crystal. Additionally, Frazier denied having ever heard Crystal's phone ring when they were in his room, but the records show two brief back-to-back calls from the same number, followed four minutes later by Frazier's 911 call after the shooting.

### Ground 1(D):   Professional Misconduct

Frazier claims, without elaboration, that his attorney's professional misconduct undermined the defense.   In his state post-conviction motion, Frazier argues that the trial court reprimanded counsel, thus affecting his credibility and prejudicing Frazier's defense.   The trial court made one mild admonition to defense counsel.   After sustaining an objection to a leading question the court addressed counsel as follows:   "Who, what, when and where.   You've been leading the whole time.   Stop it, Wilbert." (Dkt. 11-2, p. 78).   This one brief correction from the court is not significant, and the conduct leading to it is not constitutionally deficient performance. While counsel's performance may not have been flawless, it was well within the scope of reasonably competent representation.

### Conclusion

For the reasons set forth above, the instant petition for a writ of *habeas corpus* will be dismissed as conclusory and for want of substantive merit.   A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 18th day of September, 2014.


/s/ MICHAEL P. MILLS
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI